And we'll call the next case, Robert Addy, Jorge Perez and Jason Taylor v. Christian Kjaer et al. And counsel, time to get up here. Mr. Plumbus. Can I ask a question? Christian Kjaer, how do you pronounce his last name? Kjaer, your honor. Kjaer? Yes. Thank you. Kjaer. Kjaer. I thank you for that. Yes, sir. Mr. Plumbus. Good morning, your honors. May it please the court, Robert Plumbus, on behalf of the appellants, I'd like to reserve four minutes for a vote. That request will be granted. Your honor, subject to the court's preferences, I'm going to start with the interest issue and then turn to fees. And on interest, the district court has twice held in this case that the equities weigh heavily in favor of more pre-judgment fees. The question is whether interest should be awarded. What rate should be awarded at? The Virgin Islands legislature has answered that question for us. Section 951, Title 11 of the Virgin Islands Code. Perhaps that answers it as to true contract claims. But given Addy 1, isn't what we're dealing with here in the nature of restitution? And what Virgin Island case law supports the idea that with that sort of equitable remedy that we should be looking to 951? So three points on that, your honors. First of all, we don't need to get to the case law because the statute itself covers that. We can look at subsection A2, which describes what is in essence an equitable thing for restitution. It says that the interest should be 90% of money received to be used in another and retained beyond a reasonable time without the owner's consent. And that describes what's happening in this case in a restitution. The second point is that settlers have never argued that 951 doesn't apply. And the district court has already found that 951 does apply. It didn't in 2009. It did not find different in 2014. There really isn't a dispute as to whether section 951 is applicable in this situation. And so to put that issue aside, we have a district court case. As to how 951 has been applied in the Virgin Islands, even our case law seems to look at the statute as part of a set of usury laws and that 9% is a cap. In light of that, why would it be error for the district court to use a lower rate if it saw fit to do so? Respectfully, Your Honor, there is not a single Virgin Islands case that has been cited by either party in which 951 is applicable. And a court has ever awarded a different rate than 9%. As far as we know, this is the first time that has happened under Virgin Islands law. Again, where 951 applies. There also is case law in the context of contractual courts also applying 951. But in terms of when 951 applies, the legislature has made a policy decision that the prejudgment interest rate shall be 9%. That's the language of the statute. That's a policy decision that's left to the legislature and where made, the court should apply it as written and not make a decision in its discretion to ignore it. If that were the case, 951 would essentially be read out as a mandatory provision. Again, with respect to A2, I think it specifically covers equitable claims. There hasn't been any case under Virgin Islands law that excludes equitable claims from 951. And given how 951 is written, it should also point to A1, which applies to all monies which have become due. That doesn't distinguish between contract claims and equitable claims. I'd also point, Your Honor, to A4, which specifically refers to where there is a contract and no rate is specified. A4 suggests that that's a specific term related to contract and that A1 and A2 are there for a broader purpose. Again, A2 is applying in situations where money is retained for the use of another without consent. That's what we have here. This money has been retained by the sellers from 2004 to 2014. Your Honor, just to understand the error here, you can look at the 2009 judgment in which the district court applied 951, awarded pre-judgment interest at a 9% rate for that five-year period, then went through the appeal, got a reversal, ended up with a restitution judgment in our favor. It was then a 10-year period where the deposit had been held by the sellers. Twice the length of time, and the district court awarded approximately half of the pre-judgment interest. That is an absurd result. The only thing that changed during that time is that we had won the appeal and had a different basis for receiving the deposit. Well, I think it's rather difficult to say any particular person won the appeal. One of the findings of the court in the prior Addy case was that neither party had complied with the requirements of the contract, that they both breached the contract. And that's why the court said, okay, neither one can enforce it. Both breached. And Mr. Taylor ought to have his money equitably, an equitable remedy restored to him. In the interim then, too, as the cross-appellants claim, although Mr. Taylor didn't have use of the money, they didn't have use of the land. So that there was a balancing equity for them to say, yeah, in considering the interest, the court should keep in mind the fact that the list letter, whatever you call it, presented us from making full use of the property. Yes. It's a well-packed, well-packed question. I'm trying to run through it, but please redirect me if there's a point you want me to focus on. First, in your Honor's 2013 opinion, you're right that they found that all parties breached the contract. But the key point of that opinion was that Mr. Taylor was still entitled to his deposit. And that's what this case was always about. There were several claims about who was going to have this deposit at the end of the day. We brought several claims, all of which asked for the deposit. But the unjust enrichment claim, the restitution claim, was one of those claims. Our theory of the case had been from the outset that regardless of whether Jason Taylor breached, he was entitled to that deposit. So you think that he was a prevailing party in this case because he's a plaintiff that obtained relief on a significant issue in the case. And that's the standard for the prevailing party. Secondly, with respect to the use of land in the list pendants, sellers did move to strike the list pendants. So they had the right to do that once they had the judgment entered in their favor. Mr. Taylor interpreted that order that the judge entered, releasing the list pendants, as self-executing. Because to our knowledge, there was no way to undo the murder of none of the list pendants at the party. Ultimately, when the sellers brought that to the court's attention again, we filed something else with the clerk's office, indicating that the list pendants had been released, doing what we thought was acceptable. And the judge declared that the motion to release the list pendants was moved. So that was sufficient for the judge. And that was only, Your Honor, about a 16-month period where the list pendants was potentially problematic from the perspective of the sellers. Up until that point, the sellers had never moved to release the list pendants. It was properly in place, according to this report, once the issue was brought to Mr. Taylor's attention to be addressed. So I think that the important point, though, and this gets into the issue, of course, is how to judge who the prevailing party was. Let me stop you before you transition into that. On the prejudgment interest question, a preliminary issue that we have to determine is our standard of review. And there's some dispute, at least in the briefs, as to our standard of review. How would you encapsulate our standard of review on this question? It's a de novo review, Your Honor, because if you're being asked to, you can screw Section 951. And whether it is the district or any discretion, whether it's a mandatory statute that should be applied, that's written. So our first question is, mandatory versus non-mandatory, is de novo. That's what you would argue? Yes. If we found it was non-mandatory, then that review of the district court's determination might be a bit of abuse of discretion. That's correct. Okay. And on that point, Your Honor, I agree. There's absolutely nothing in the record to support the 3% rate that the district court came up with. It literally came up in error at the end of the case. All right. Why don't you transition to the second point that you wanted to touch on? Thank you, Your Honor. With respect to the fee issue, the threshold question is before the district court on Mr. Taylor's motions of fees and whether he was a prevailing party. Now, as Your Honor, Judge Roth mentioned, there were clearly a lot of deep claims that went back and forth in this case. And at the end of the day, what happened was Mr. Taylor received a deposit that had caused him to file suit from the beginning. That was the core issue of the case. It was relief that he had sought at the outset of the case on a substantial issue. And under the Virgin Islands case law, which relies on the Supreme Court case law, that means that Mr. Taylor is a prevailing party. Now, the district court, whatever exactly its finding was of a prevailing party, it clearly did not perform that analysis under the case law that applies to this issue. It didn't ask did Mr. Taylor receive relief that he had sought on this significant issue. That was the core issue of the case. He just said, well, either both parties prevail or neither of the parties prevail. And, Your Honor, under any objective standard that's set out in Virgin Islands law, that is an incorrect determination. And at the very least, it affected the district court's exercise of discretion in respect to whether to award fees. And we believe that the initial determination of whether the case is ailing the prevailing party is, again, reviewed to no avail, because it's a question of law. We've cited the case law and we agree with that. But even if, Your Honor, you look at this as purely a discretionary issue, the fact that the district court applied the wrong legal standard on that threshold... All right, if we find that the district court did not apply the wrong legal standard, then you agree the district court has a choice as to whether or not it should grant attorneys fees or not grant attorneys fees. That's true, Your Honor. And our argument is that the discretionary factors that the court considered in that scenario that you just described were also error and were outside of the bounds of what district courts had considered in the situation. You're also arguing we don't know what those are because there weren't findings that were made. That's right. The whole thing is that that section is very confusing, I would suggest. It's just unclear what the district court was thinking in that particular situation. But it starts, Your Honor, with a misunderstanding or a misapplication of Virgin Islands law on the prevailing party issue. And that flows through bounds of discretionary determination about whether to award fees. The district court also found that Mr. Taylor's breach of contract was a factor. And our argument is that it's not a factor. That was the point of this court's opinion in 2013. Mr. Taylor is entitled to the deposit regardless of whether he breached the contract. And the court erred in considering that. While making findings might assist our review, what authority do you point to to support the notion that in declining attorneys fees the district court must make findings? Well, Your Honor, I think our main point on this is that what the district court has to do is apply the standards with respect to prevailing parties, that threshold issue. So that is where we start and why we think that this is in error. Your Honor, as we get past that point, what the district court has to do is consider factors that are within its discretion. And when it comes to the breach of contract, that is outside its discretion. Because it was contrary to the purpose and the outcome of the case. The outcome of the case was such that his breach of contract didn't matter in order for Mr. Taylor to obtain the relief that he sought. Well, it did matter in that he could not obtain relief for breach of contract. That's true, Your Honor, but the relief was the same under either theory. The relief under restitution theory was a maternity deposit. If the relief for a breach of contract was also a maternity deposit, it was the same relief brought under both theories. Yeah, but the basis for the relief was different because he did breach the contract. As an equitable manner, the court decided this thing ought to go back where it started and Mr. Taylor ought to get his money back. But that Mr. Taylor was equally blameful for his breach of contract for breaching the contract as the other side was. And the relief he obtained was not the relief he originally was, well, was not what appeared to be the major relief that he was asking for, which was breach of contract. Your Honor, respectfully, I disagree. Under both the breach of contract claim and the restitution claim, the relief that was being sought was a maternity deposit. Essentially, in the 2013 appeal, what our position was is it doesn't matter whether Jason Taylor has breached the contract. The jury found in favor of Mr. Taylor. The court really ruled it. And when we got to this court, we said, you know what, we're just going to fight this on the restitution argument because it doesn't matter. The legal basis for awarding the deposit back to Mr. Taylor is the seller's breach of contract. And that was true whether you proceeded under the breach of contract claim or the restatement section that Your Honor applied in awarding restitution. In either situation, the relief was the same under both claims. And the effect and the outcome of the case is the same. Okay. Mr. Palumbus, we understand your position. And we'll have you back on rebuttal. But we'll now turn to Ms. Talton. Correct. Thank you, Your Honor. Good morning. May it please the Court. My name is Sherry Talton, and I represent the sellers of the properties at issue in this case. Regarding attorney's fees, the district court acted firmly within the range of both its discretion and equity by clearly designating Mr. Taylor as a prevailing party, identifying its authority to deny fees to a prevailing party, and then considering a number of equitable factors, including the inextricably intertwined breaches by each party. Regarding the prejudgment interest, the district court also correctly determined that prejudgment interest should be granted unless exceptional or unusual circumstances would render that award inequitable. And, in fact, here the district court identified such a circumstance. It found that the statutory rate of 9 percent would be a windfall to the buyers. Where does the statute say that? Where does the statute say what, Your Honor? Where does the statute give the court the ability to make that determination? I mean, it says the rate of interest shall be 9 percent per annum. Well, Your Honor, it does. How do you get by that? It does use the word shall. It's tough to get by that word. No, Your Honor, I don't think that it is, respectfully. If you agree, which the parties do, that the statute is construed in terms of equity, which even the buyers' cases, the McDonald case, Sykes, Third Circuit cases, Booker, and DuPont, which tell us that the court should grant the award unless doing so would be inequitable. So the statute must be construed in terms of equity. And if equity is our overarching goal here, then the district court has to be free to fashion an award that would meet the circumstances of the particular case. And equity isn't always zero or full 9 percent. Sometimes it falls in the middle. Additionally, it's illogical to mandate a static rate when you're thinking about an equity or in any other reason because the district court could have just as easily have adjusted the timeframe of the award of prejudgment interest to get the same result. And even under buyers' interpretation of the law, that would have been an appropriate action. Will I have the statute then if you're going to ignore it? Well, Your Honor, I don't think it's about ignoring it. The Ascensio case at a superior court characterized this very statute, Section 951, as a cap on the maximum amount of interest that can be charged. And I think the reason the superior court used that term is because it acknowledged that we have to always consider equity when we're making an award of prejudgment interest. Well, that's an argument somebody should have made to the Virgin Islands legislature. Your Honor, I'd be happy to do that. Unfortunately, it might be too late for your clients. Yes, Your Honor, I'm afraid it might be. But while we're talking about the interest issue, I do want to address the relevant standard of review, if I could. I disagree that the standard is the plenary review. In the Iola case cited in our brief, which is a Third Circuit 2012 case, the court used an abusive discretion standard because the parties there objected to the rate of prejudgment interest that the district court employed. That's the correct standard. The case that the buyers cite is U.S. v. American Insurance, which is a Third Circuit case that had to use plenary review because it was a contractual rate of interest. So they were construing a private contract. That is not what's going on here. But isn't the issue whether we are interpreting a statute or the scope of applicability of that statute? That is either of those would be a legal question, and that would involve plenary review, right? Well, I think that it would involve questions of law, but I think that it would be an abusive discretion, just like it was in the Iola case. There is a fine line, but regardless, clearly you have to read the statute consistently with the case law that interprets it in the Third Circuit telling us that we have to construe it in terms of equity. What case applies 951 to impose a lower standard than 9%? Your Honor, regretfully, I haven't found one. And I think the reason for that is simply because it's a pretty common practice for these cases to be contract cases where the damages are readily ascertainable. And so I just don't think this scenario arises very frequently. I wish I had that case for you. If one of the things we're supposed to consider is the equities, what is your response to the point that Mr. Palamas has raised, that in terms of the fairness, what his client is receiving in prejudgment interest 10 years after the fact, double the length of time, is less than what the district court was prepared to award five years earlier? Well, I think that actually proves our point. And it's because the original judgment in 2011 was about half of the interest that the 2014 interest rate, interest award was. And I think the reason for that, there were two reasons, you know, that the court found it to be inequitable in 2014. The first, in the primary, was that in 2014, unlike in 2011, Mr. Taylor had been found to breach the contract. That was not the case when the first judgment had been rendered. And second, I think the fact that the court has twice ruled that equity requires an award of interest, but the court then felt compelled to reduce that award despite the length of time, is because of the type of windfall that will result to the buyers if they get the full 9%, especially when you consider, as Your Honor, Judge Fischer pointed out before, that there are other factors, that the sellers incurred significant damages. Also, especially when you consider Taylor's role in the initiation of this litigation. All right, let's go back to the first point that you raised and went over pretty quickly and was the subject of a substantial argument by counsel on the other side. Did the district court use the wrong standard in determining whether or not Taylor was a prevailing party? No, Your Honor, the district court did not. I think the parties generally agree that the standard of review is abuse of discretion, unless the district court's choice of the relevant legal standard. In that case, then, it requires a plenary analysis. But in this case, all the parties agreed on the relevant legal standards, and those were the standards that the district court applied. Is it your position under the fee-shifting statute of the Virgin Islands that the district court can deny prevailing parties attorneys' fees without setting forth its findings or rationale? No, Your Honor. I do believe that the district court needs to explain its decision, but I think this court did. There's an 18-page opinion with a very concise explanation of the various factors that went into the denial of fees here. And so, but if I could go back to that. But can we know why the court picked 3% as opposed to 4% or 5% or 2%? Isn't that helpful to us in our review of the case? It would have been, and that would be on the interest question, Your Honor. And here's my thought on that. I don't think the 3% number was random. In the Iola case, as it happened, that court also used a 3.91% interest rate, which related to the federal rate. But more importantly, 3% is one-third of 9%, and Mr. Taylor is one-third of the buyers. And I truly believe that that was the thought process behind the district court's decision, because the district court, again, was trying to absorb equity. But to answer your question, Your Honor, I think the – I'm sorry, Judge Fischer – your question was about whether the district court used the proper analysis to determine if Mr. Taylor was the prevailing party. I submit that it did. The appendix, page 217, the court clearly identifies Mr. Taylor as the prevailing party because he obtained some of the benefits that he sought in the litigation. The court acknowledged that he prevailed on both the unjust enrichment and the contract claim, although he only got relief for the unjust enrichment claim. And I think that demonstrates that the court used the correct legal standard, which is that the prevailing party need only achieve its benefits, some of its benefits, for the litigation in order to qualify as a prevailing party. And then further, the district court acknowledged, which the parties agreed to, that a prevailing party is not automatically guaranteed to a court of attorney's fees. Okay, but did the district court make sufficient findings to support its determination that Taylor was not entitled to attorney's fees? Oh, certainly it did. Your Honor, it gave a number of equitable factors that the district court looked at to determine, including the complexity of the case, which was made worse by Mr. Taylor's insistence throughout the entire case that he breached the contract, when later he conceded that he didn't. It also referred to the inextricably intertwined breaches by each party, which is a fault-based concern. And it's important on this point. The buyers argue that the sellers were equally responsible because we didn't give the deposit back. But that doesn't assist their position here, because as long as they were a party at fault and a contributing factor to the initiation of the litigation, the equity cases, like the Smith case out of the Third Circuit and the Bedford case out of the DVI, citing Third Circuit law, tells us that that's the key to the question of whether or not a prevailing party is entitled to fees. It may also be relating to whether or not the amount of fees is sufficient. But we never did there in this case because they weren't entitled to it. Ms. Talton, could you also address this briefly, the post-judgment interest question? Yes, ma'am. What would you like to know? Well, specifically, we have here a situation that arguably is more like Kaiser than Dunn in the sense that here we have a completely different legal theory that was used even for the initial imposition of the $1.5 million judgment. Under those circumstances, why shouldn't we look at the post-judgment interest as running from the second judgment? Your Honor, if my time is up, may I briefly answer? Yeah, you may respond. Okay. I think the reason is because, well, first of all, I'd like to say this case is incredibly unique in comparison to any other case cited by any of the parties. But the answer to your question is that the damages were always ascertained from the very beginning. And that's the reason why we didn't have to go back and have another trial on damages for unjust enrichment because it was exactly the same. So in my mind, that's, under the Laughlin case, the mid-range that we should consider the ascertainment of the damages. Does that answer your question? If I can follow up just with one more question. It seems that you're saying because it's the same numerical damages award that it doesn't matter what the basis is for imposing that award. How does our case law support that notion? Not only just the numerical basis, Your Honor, but also the factual basis for it, which I think is important. It's interesting, too, that the breach of contract claim sought other damages. And they contend that their core relief was the return to the deposit. My recollection of the previous appeal was that there were claims on both sides and there certainly was no set determination of what damages ought to be, that this was something that we had to very carefully parse out from our review of the case and our determination, had there been a breach of contract, by whom, at what time. And certainly, I can't say that we walked out of oral argument the last time saying, oh, well, at least we know what the damages ought to be. Well, I'm sorry that that was your experience, Your Honor. I was there as well. But in my opinion, the unjust enrichment claim only had the deposit as the relief that was sought. And that's why I think it's closer to Laughlin. Are there any other questions? No. Thank you. Okay, thank you, Ms. Talton. And Ms. Hodge? Good afternoon, members of the Court. If it pleases the Court, Maria Tankinson Hodge. I represent Kevin DeMoore in this matter. Mr. DeMoore is the attorney for the sellers in the transaction who was brought into this case by the complaint filed by the buyers, including Mr. Taylor, seeking to hold him responsible for their claimed losses. And as the Court knows, in the previous appeal in this case, the judgments at the lower court against Mr. DeMoore were reversed, and Mr. DeMoore was found not liable to the plaintiffs on any of their claims. But that was basically on the gist of the action theory rather than on a lack of concern of what he had done, which perhaps had complicated the whole matter. Well, Your Honor, I would submit to the Court the following. Once this Court determined that under the gist of the action doctrine Mr. DeMoore was not liable to the plaintiffs, to the buyers or anything, it means he shouldn't have been made a party in the case. Because what the gist of the action doctrine says, as I understand it, is this is a dispute between buyers and sellers. The gist of their dispute is a dispute over a contract for the sale of real estate. The seller's lawyer did not belong in that lawsuit. Is it your position, then, that a conclusion of no liability means as a matter of law that one is entitled to attorney's fees regardless of factual findings made by a court as to fault? In this case, Your Honor, I submit that once the finding was made by the reversal mandated by this Court that Mr. DeMoore was not liable for anything, that the gist of the action was a dispute between buyers and sellers under a real estate contract, that that rendered the findings of fact that the district judge had made moot. In fact, it indicates that they should never have been made. But why would those findings be moot when, I take it you agree that the imposition of attorney's fees is a matter left to the discretion of the district court? And then why can't the district court take those factual findings into account in exercising his or her discretion? So my position, Your Honor, is it was improper for him to take into account findings that he had made in connection with claims that this Court had held were improper, that there was no liability for those claims. That to look at the findings that supported conclusions that the Court said were wrong, that had to be vacated, was likewise incorrect. But nothing we said in Addy undermined the factual findings. Well, the Court didn't talk about the specific factual findings. It simply held that there was no liability for Mr. DeMoore. He didn't belong in the case. The gist of the action was. So he couldn't look at DeMoore's conduct at all is what you're saying? I would not say, Your Honor, that he couldn't look at his conduct at all, but I would certainly say that he could not turn to findings he had made in connection with claims that were stricken from the case as a basis for a denial. Well, where did it say it was stricken from the case? The evidence was there. The testimony was there. But with respect to you, Your Honor, it shouldn't have been there, because. No, it was there, though. It was there, but I submitted to the Court that when. And it had to be there. It was testimony important to all the claims in the case. You know, what happened to the deposit, the second deposit of the $500,000? Was that properly released to the appellants here? There was arguments that Mr. DeMoore should not have permitted that money to be released, and that if that had not happened, that that would have solved one of the problems in the case. And I think that for all the parties involved, his actions were relevant to the ultimate outcome, and his actions to a certain extent could be criticized, but at the same time, under the gist of the action, the recognition that this was a contract, that there was no fraud as a separate matter not related to the contract that would permit the fraud claim to be brought. It was not an easy question. The facts had to be in. And the Court had to be cognizant of the facts of his action. And I think that the district court then on remand had to be cognizant of those facts, too, in exercising its discretion on whether Mr. DeMoore could get attorney's fees or not. If I may respond, Your Honor. The idea that there was a claim that it was incorrect for the deposit to be released, it really goes to the role of the escrow company. But it would not have changed the outcome of this case, because if the money were still in escrow, it would still have been true that the buyers and sellers would have been fighting about who was entitled to that money. That wasn't the factor that caused this case to go forward or not to have existed as a dispute between the parties. And as it turned out, Mr. DeMoore was the only party in the case who prevailed on every claim involving him. And Mr. Taylor was the party who, as the district court judge, prevailed only on a single claim. And the effort of the appellants to suggest that the two should be treated differently, but that somehow Mr. Taylor should be entitled to an award of attorney's fees, but Mr. DeMoore, the one prevailing party on all claims, should not. I think it's just inconsistent with the purpose of that statute, especially when, in this case, the district judge said, in explaining his reason for denying fees to both parties, that this was a case in which there were inextricably intertwined breaches of contract. And Mr. DeMoore was not a party to any of those contracts, whereas Mr. Taylor was obviously a party to all those contracts and to the inextricable breaches. So in this case, our position is that Mr. DeMoore was entitled, under the statute, to have an award of fees, and that the distinction would properly be drawn between him and Mr. Taylor, who prevailed only on a single claim, only on what we think was a belated equitable claim. And it was incorrect for the judge to effectively treat the two alike. Okay. All right, Ms. Watts, thank you very much. And Mr. Palumbis on rebuttal. Mr. Palumbis, isn't it the case that the parties agreed below that the most equitable thing for this Court to do when both sides prove fraud and breach of contract is simply not to award fees to either side? That was at a time before the restitution claim had been resolved. The district court had refused to send that issue to the jury for damages. So at that point, we were at a different stage in this case and a different outcome. I'll also mention that the court did not rely on that argument at all because it specifically reserved the question of returning fees until after this Court had ruled in 2013. It decided to wait, let the dust settle, and then it was going to look at the issue. So at that time, we were in a different posture. The restitution claim had been announcement to the jury and was essentially in reserve as far as the position. And both sides had breached. Now we have a different situation with the restitution claim. But as we just discussed at length with your colleague, the factual findings still stand, including breaches of contract on both sides. Isn't that what fundamentally informs the rather equitable resolution that both parties seem to have agreed upon below? No, Your Honor, I don't think so. And with respect to Mr. Taylor, again, our position is that the district court didn't get to a position where it was properly evaluating equitable considerations with regard to human services. It didn't determine Mr. Taylor was the only prevailing party that had been subdued. It didn't determine that Mr. Taylor was the only prevailing party in the Hensley case, which was adopted by the Northern Highlands case law. And so it may be the case that I'm reading now, Your Honor, that the district judge will look at the factors and view the factors that you just discussed as weighing against the order of the instance, Mr. Taylor. He didn't get there in this case. The judge did consider the complexity of the case, the complexity of this matter. I'm reading from page 273 of the record. He doesn't say anything else about what the complexity of the matter means. He's not talking about any particular party making it complex. He's not making any factual findings about that. So we don't know how that goes into this decision. But he mentions the breaches on both sides. Our argument, which I made earlier, is that the breach by Mr. Taylor is irrelevant to his unjust enrichment claim, which is part of this case. At the very beginning, that claim would have been in this case, regardless of whether he had breached it or prevailed on it. So it was legally irrelevant. It shouldn't have been considered. Okay. Now, if that's your argument, let's move to Ms. Hodge's argument. She says Mr. DeMoore should get attorney's fees. That's right. And you don't want the court to consider certain factors as to whether or not you should get attorney's fees. Why is it Mr. DeMoore correct, under your theory? Because, Your Honor, the Waltoon case applies directly to Mr. DeMoore's situation. The reason Waltoon does not apply to our situation, Mr. Taylor's request, is because that unjust enrichment claim would have been brought regardless of and would have succeeded regardless of whether the contract had been breached, regardless of whether Mr. Taylor had been proven to have breached the contract. So there is no but-for causation between the initiation of the claims against sellers and the breach. Mr. Billow, isn't that argument inconsistent with your argument on post-judgment interest? That is, if essentially we should be viewing this as a reinstatement of the 2009 judgment, and but for the court's imposition of a judgment on the breach of contract, the jury had made a finding on unjust enrichment. Presumably that would have been the basis for a $1.5 million judgment. Under those circumstances, doesn't that counsel in favor of post-judgment interest going back to the first original judgment? To speak to that particular question, Your Honor, identify the Kaiser case, also the Waltoon case, that's directly on point. The court cannot award, can't start post-judgment interest until the judgment has actually been entered on at some point. There was no judgment that had ever been entered on the unjust enrichment. The jury made a finding. The district court refused to enter judgment on it. So it is under law in Kaiser, you really can't start post-judgment interest until you actually have a judgment. But in the circumstances of this case, why isn't it the functional equivalent? It's based on the same factual findings. It was true, the theory was breach of contract, but the only reason that the unjust enrichment was not entered was because breach of contract presumably would presuppose that. So it's why isn't it more like Dunn or Lohman where it's the same amount, no new factual findings, no need for additional jury trial? So, Your Honor, I would disagree with the premise of that question, which is that the only reason that the 1.5 million was reported on the unjust enrichment was because of the breach of contract. When the district judge reduced the contract damages from 1.5 to 0 after the 2009 judgment, we then said to the district court, okay, what about the restitution claim? We have a restitution claim that we won in front of the jury, but damages should be entered, the restitution should be awarded. And the district court said, no, that's not my finding. And so we had to come to this court in one year. So there was never, the two theories weren't interchangeable. It's certainly true that the facts were the same, but the two theories weren't interchangeable. And the district court itself held that and refused to enter judgment in our case until this court ordered it to do so. Okay. All right, Mr. Columbus, thank you very much. And we thank all counsel for their very helpful arguments and excellent work on the briefs, and we'll take the matter under advisement.